Good morning, Your Honors. May it please the Court, Kirk Passage for Big 5. I recognize, Your Honors, that there's a multitude of issues involved, but what I'd like to start with is the Fair Labor Standards Act exclusion, because it seems to me that's the one that will ultimately be relied upon by Gulf in arguing that there's no coverage whatsoever for these kind of employment claims. Now, when I look at the Fair Standards Act exclusion, which the District Court relied upon, I see a few problems with it. First and foremost is the fact that Gulf elected to use language in that exclusion that's not precise. By talking about similar, first of all, the case law recognizes that similar is an inaccurate and imprecise term. And second of all, when they dealt with it, when the District Court in Gulf dealt with it, when you judge that exclusion in the context of the other exclusions, it is narrower. The immediate preceding exclusion talks about similar laws. This exclusion talks about similar provisions in the law, thus mandating that one look at the Federal Fair Labor Standards Act on the one hand and compare it with the California Labor Code on the other hand. Sotomayor, does it say similar provisions in the law or laws with similar provisions? Similar provisions, your second wording. But the way the exclusion works, it does look at similar provisions. Similar modifies provisions, not law. So it would direct you to take a look at the California statute and to determine on a provision-by-provision basis whether the California provisions are similar to, whatever that means, the Fair Labor Standards Act provisions. Counsel, what cases are you relying upon for your representation that the word similar is imprecise? It's a case called McEwen, your Honor, which was cited in our brief. It's an Eighth Circuit decision. The exact phrase was that similar – it dealt with two words in McEwen. One was similar, one was related. And what the McEwen court said was that those terms are, and I'll directly quote, so elastic, so lacking in concrete content, that they import into the contract substantial ambiguities. But this Court has not made a similar ruling. Your Honor, I would have to concede that under your definition of similar, that's correct. Under my definition of similar, I might argue that the Court has said in a number of contexts, as has the California Supreme Court, that a clearer, more precise alternative language is available. It's incumbent upon the insurance company to use that language. And I think we wouldn't be here today on this issue, at least, if Gulf had similar – had simply elected to use similar wording in each exclusion. The prior exclusion says similar law. I think I would be hard-pressed to argue that these California labor code provisions aren't at least motivated by a similar concern. That much, I think, we have to concede. So it's your argument that if the provision read similar law, you would be fine with that. But because it reads law with similar provisions, you think it's ambiguous? Actually, I'm drawing a slightly different distinction, Your Honor. I think if it said similar law, I'd be talking here, arguing about whether that is ambiguous and how you interpret ambiguous exclusions. But I don't think I have to reach that point. I think our interpretation is at least reasonable. I think we win in a battle of reasonable interpretations. And I think you could go so far as to say that our interpretation is the plain meaning of the language. But wouldn't – isn't that true only if the language is ambiguous? No. I think, Your Honor, I think if you were to go through California law on interpreting contracts, a court would have to at least provisionally consider extrinsic evidence to address the ambiguity. But I don't think we need to do that here. I think in this context, when you look at two exclusions that are next to each other, and the prior one says similar law, unless you're going to read similar law to mean the exact same thing as similar provisions, and I don't read them that way, and I think the differences in the provisions show an intent that they mean different things, I think that's how you interpret insurance policies, particularly with exclusions. And my answer would be the Fair Labor Standards Act exclusion is bias express meaning a narrower exclusion. It doesn't just look at whether the ambit of the law is similar. It requires you to look at the provisions. And in Ramirez, which is the California Supreme Court case that I think started off this wage-hour litigation that we've seen in California, the Court was very careful to say California provisions are not similar. They are dissimilar. It would be wrong to look to the Fair Labor Standards Act for guidance on these provisions. We are more protective. We are different. But, counsel, don't we look at the words according to the plain meaning a layperson would attach to those? It seems kind of like a lawyer's argument as opposed to a layperson's understanding of the wording. Your Honor, I think that we do absolutely agree with you. You don't look at it like an insurance expert would and you don't look at it like a lawyer would. But you do look at it in terms of what dictionary definitions are. I would concede that absolutely. And you look at it in terms of similarities or differences in language throughout the policy. Case law is very clear that when you interpret insurance policies, if the same things are used in multiple provisions, you interpret them consistently. By the same token, if the carrier has a ---- unless this is just some totally random act and they made a mistake, when you have two exclusions next to each other, there has to be a difference in meaning between similar law and similar provision. And to say in this case that similar provision in one exclusion has the same, in my view, broader meaning as similar law, then you're basically taking that phrase and interpreting it broadly in an exclusion, which is exactly the opposite of what a court is supposed to do. The court is supposed to do. Does the insurance company treat this as an exclusion issue or a coverage issue? Well, they have to treat it as an exclusion issue because this is actually one of the exclusions that's found in the section labeled exclusion in the policy. This is not found in the definition of one of the coverage grants. So, in fact, it's found specifically in the exclusion that applies to this particular coverage part. And so it is an exclusion. They have the burden. It has to be plain, clear, and conspicuous. It has to be unmistakable. You can take sort of all of those principles of insurance policy and contract interpretation and apply them here. And I think when you do that, and frankly, I think if they had used the broader language, we'd still be okay as a matter of determining whether there's a potential for coverage that triggers the duty-to-pay defense costs. And in terms of saying under Ramirez, are these laws similar or not, I think we win the broader one, because I think they had a duty to make it clear. They could have said anything arising out of wage-hour claims, if they wanted to, would be excluded. They could say anything arising out of the laws governing overtime or pay for employees would be excluded. I could sit here and probably list 30 or 40 different things that would eliminate the debate. And my view is if we have a debate and it's a fair debate, and I think at best for golf it's a fair debate, we should win that when it's an exclusion. You're – are you ultimately saying that because the manner in which you interpret this exclusion that the insurance covers a claim for unpaid overtime? Well, Your Honor, I think you have to break the claim up into its component pieces. I know. I'm just starting with that part. With that part, I do believe that this policy would cover that claim under the first cause of action in the Mosley complaint. So you would say the parties intended that if they decided not to pay overtime to people that were entitled to overtime, that the insurance company would be paying their overtime for them? No, it's not paying your overtime here, Your Honor. I do think this is a damage claim. Half this settlement was for incidental damages with 1099 treatment as opposed to W-2 treatment. That half was expressly not a payment of wages. So they wouldn't have to pay that part of the settlement? I mean, you can't even – I don't even – I believe they have to pay it all because I believe, first of all, taking your question of intent, there's no evidence in the record that golf and Big Shot down and said, what are we going to do with the overtime claim? We have to – we have to somehow interpret this policy reasonably, and I'm pushing you because I'm trying to figure out – you're saying that you can insure yourself in California for not paying overtime. So if we – if you work your employees 50 hours a week, you're supposed to pay them an extra for the 10, that we can insure ourselves for that payment. And if someone makes a claim, we turn it over to the insurance company and they pay the overtime. Your Honor, I don't think I necessarily have to go that far to win it, but that would be my ultimate position for a very simple reason. And I think the AIU case, the California decision in AIU, is very helpful on this point. In AIU, one of the arguments that the insurance companies made was that you had a new statutory liability in the form of the Superfund law, CERCLA. And they said, hey, no one shows that there was any intent in – by the underwriters of the policies, or certainly in the negotiations, to cover that new statutory liability. And California Supreme Court rejected that issue in a footnote. And it said, it doesn't matter. These kind of policies – and this – that was a general liability policy. This is a D&O policy, but with catch-all provisions. The odd concept behind these policies is you cover new liabilities, whether they're creatures of statute or creatures of common law. It's the same thing here. There is no record in the case law of any body of wage-hour overtime cases based on a difference between the California Labor Code and the Fair Labor Standards Act. That happened with Ramirez. And then you had insurance companies coming back, like Goff did, and saying, we don't cover that for a myriad of reasons. Well, if you want to expressly not cover it, then you need to say so. As the Ninth Circuit, this Court has recognized before, and K.F. Darries, if you're going to try to import a public policy argument, you need to put that in an exclusion. You can't just sort of refer to a public policy argument. It's incumbent upon the carrier to exclude it. But whether or not we get there, and we haven't even touched on the restitution issue, I don't believe that drives anything with the lower court decision, because when we look at what happened below, there was a cause of action, the first one, which sought damages plus incidental damages and attorney's fees. The attorney's fee award under the settlement was premised on the Labor Code cause of action, not the 17-200 claim. The only fee request in that complaint was under the Labor Code cause of action. The individual class representatives received enhancement payments or service payments, whatever you want to call them. Granted, it was a relatively small amount of the overall settlement, just $28,500. The attorney's fees on the first cause of action was $690,000. The settlement itself depended on what prove-up was done and what submissions were made thereafter. That's not really part of this record or this debate. But when you look at the question, the starting question of did these folks have a duty to advance defense costs, they attempt to draw the distinction and say this wasn't a duty to defend policy. I agree, it's not. But the standard in looking at your obligation to advance defense costs is the same. And whatever else you can say about the Fair Labor Standards Act exclusion. Scalia. What does that mean? I didn't follow that. If a policy doesn't require them to pay defense costs, what distinction do you make in they still had to pay defense costs? Your Honor, it's not a duty to defend policy in the sense that they did not have an obligation to hire counsel to defend Big Five. They do have an obligation under the policy to pay defense costs. And some carriers like Gulf have made the argument that there's a difference in standard as to when those things are triggered. But the duty to defend the case law for decades has been if there's a potential for coverage, even if ultimately there's no indemnity duty, you as an insurance company have to step in and pay defense costs. Pay or advance. That's an important distinction. For duty to defend, you have to pay those defense costs. For a duty to pay defense costs, which is what this policy imposes, so they don't have to hire the lawyers, they have a clause in there that obligates them to advance defense costs, meaning before there's an ultimate decision in the case. And Gulf's claim on this one, I think, is an interesting claim. It's we only have to advance if we believe there's something that might be covered. Well, that then why isn't that a reasonable conclusion? Isn't that what coverage is all about? It certainly does suggest that, but there's two points that play into that. Number one is how do you determine whether there's a reasonable basis that they should have this duty to advance? We submit that it's the potentiality standard that's normally used with the duty to defend that other courts have applied to D&O policies and policies that say the duty is to pay defense costs at some point. Yeah, but there's got to be some trigger relating to the coverage. And if there's no coverage, how can there be any duty to advance defense costs? The question is whether there's that potential for coverage. And in this case, Your Honor, I would submit on the record there was. And it falls in these areas. Their defense provision excuses them from paying only with respect to claims of nonmonetary damages. And this is where the district court, Judge Ray, made a mistake. On the one part in his minute order that was ultimately part of his order in judgment, he says that he concludes this is all about restitution and it's not an award of money damages. But a page and a half later, when he turns to the question of this clause that has the defense obligation, it says you except for defense costs, that provision, it talks about nonmoney damages. Judge Ray then says this doesn't involve, this involves a claim for money damages. But counsel, the difficulty I'm having with your argument is whether it's money damage, restitution, equitable relief, doesn't there first have to be a potential valid claim upon which those damages rest, whatever that remedy is? Not a valid claim, but a potential claim. Potential, potential valid claim. Well, you can have a meritless claim and they still have a duty to respond to it. That's what I don't understand. I don't understand that argument at all. They have a duty to respond to a meritless claim? Well, Your Honor, if it's not covered, I would concede if there's no possibility  of coverage, that's the standard under the Montrose decision by the California Supreme Court. If there is even a bare potentiality, to use the Supreme Court's words, they have a duty to cover. If they can't eliminate even the bare potentiality, they lose for purposes of defense duty. And that's why they're attempting to draw this distinction between duty to defend and duty to advance defense costs. What was the bare potentiality of coverage, in your view, under this policy? If we go to the first cause of action, Your Honor, that was the cause of action in which the plaintiffs expressly requested damages, attorney's fees, and incidental damages. But what was the claim? The claim first. Doesn't the claim have to come under the policy before we even get to the damages? That's the difficulty I'm having with your argument, is you're jumping ahead to the remedy before we determine whether or not there was a claim that was covered by the policy. Your Honor, the claim in the first cause of action in Mosler was a claim under the Labor Code. The Labor Code claim was a claim for payment of overtime for which damages are permitted unlike the 1720 claim. So we stop right there? Sure. Okay. The claim for payment of overtime, where would that fall in the policy in terms of coverage? It falls within both the definition of the employment claims that are covered. There's no dispute that that kind of employment claim was alleged. GOLF conceded it below. It's not an issue. The claim is alleged that potentially triggers coverage. They admit that. But aren't there other — isn't there other language that defines loss that has to be read with that employment claim language to determine whether or not there is a potential? I agree, Your Honor. We start with the notion of is there a claim that fits the definition of claim in the policy. Right. GOLF never disputed that. Then the question is, is there some sort of loss that's sought in the Mosley claim that's the kind of loss covered by the policy? And that's then where you have to go to the definition of loss, which is the entire amount that we have to pay, subject to eight carve-outs, which is kind of a bizarre place to find exclusions in the coverage. Well, I mean, bizarre or not, it's there, and it excludes salaries or wages of the directors or officers of the company, which in turn is included with respect to an employment claim only, any other person who are employees of the insured company. So if it comes within that category, it's excludable. It's not a loss. It does. Well, if the exclusion is plain, clear and conspicuous, and we obviously briefed whether that was or not when you bury it, but if you walk through their math, their definition is directors and officers, initial caps. That's what's excluded. This provision applies to lowercase directors or officers. When you go to the definition of directors and officers, initial caps, one of the things they say, and this is how they define it, directors and officers includes directors or officers, lowercase, and employees. So if you're going to read this use of directors or officers in the exclusion buried in this provision to mean capital D directors and capital officers, I think that's wrong, Yaron. Directors and officers, the defined phrase, has two subparts. One is directors or officers, and the other is employees. They use the subpart here in this provision. They don't use the defined directors and officers term. They don't use the word and, and they don't use the initial caps of a defined term that is this format in this policy to show when they're referring to a specially defined term. Is this in the exclusion section, though? Well, Yaron, this is how it works, and I actually did the math on this. And by the way, the phrase directors and officers appears 18 times in the policy with initial caps. The phrase directors or officers appears 24 times in the policy without caps and with the use of or, and they seem to be different uses. Here, here's what you have to do. If you're the lay person looking at this policy, you have to check the policy to see if there are exclusions that are not found in the section labeled exclusions. You then have to go to the definition section and find the sixth definition. You then have to go from there to check the endorsements. And when you find endorsement number eight, 17 pages into the policy, you find that it modifies the sixth definition of directors and officers. You then have to figure out which one of those works here, incorporate that definition, a director and officer into that twelfth definition in the policy, which is the definition of loss. And then you have to take that definition of loss to see if it has any hidden exclusions that might apply, and there are eight exclusions there. And then you take all of that stuff and you import it into the insuring clause. Okay, so what's the answer to my question? It's an exclusion, and they have the burden. Okay, so what case authority are you relying upon to support your assertion that the definitions section becomes exclusion? Ponder versus Blue Cross, California Supreme Court, McKinnon, and Safeco. What's your best case? Those are the three cases. The most recent case is Safeco on exclusions in policy. That expressly defines when wording that's not specifically included in the exclusion section becomes an exclusion. It says limiting language and exclusions must be plain, clear, and constructive. That's not the question. My question is, what case authority are you relying upon to support your argument that language that's included in the definition section should be read as an exclusion? Those cases, Your Honor, because they stand for the proposition that any limiting language in a policy that has the effect of limiting coverage otherwise provided is subject to the clear, conspicuous, plain test, the carrier has the burden of proof. Thank you, counsel. Your time has expired. We will now hear from the insurance company. You may. Good morning. David DiBiase, occurring on behalf of Papel eGolf. You have just heard a cogent presentation from a very capable attorney, which was essentially a narration of word mincing. The approach that has been taken by Big Five to this case attacks specific words, looks at whether or not particular words are capitalized, and starts at the wrong end of the policy by suggesting that an exclusion, which is our last round, which is our third suspender past our belt and second set of suspenders, is somehow controlling, misses the point. I propose to briefly address this Court, if it pleases the Court, from a bigger picture perspective, which is to look at the nature of the claim asserted, look at the underlying conduct of Big Five that gave rise to that claim, and then to ask ourselves whether the claim for relief under this insurance policy predicated upon word mincing is appropriate or is, as I respectfully submit, entirely inconsistent with public policy and totally contrary to the express wording of the policy itself. I start that position and premise it upon the clear wording of two California Supreme Court decisions. In Cortez v. Purillator Air, cited at page 31 of the answering brief, the California Supreme Court said with respect to damages, claimed damages, for unpaid wages as follows, quote, the amount of unpaid wages was simply the measure of the wrongful benefit to the employer, not damages, not damages. The Lohr case, L-O-H-R, also cited on page 31 and quoted through page 32 of our brief, states that, quote, earned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages. Why do I cite these provisions? Damages result in a damaged party having to give up something they did not previously have. They have to pay something that, if you will, puts them in the red. Here, Big Five has been called upon to simply return to pay to its employees the amount the employees had coming all along. And how do you say is that significant for purposes of this insurance policy? Well, it's significant because the California Supreme Court, in a case cited with 42 and 43 of our opening brief, states that, quote, when the law requires a wrongdoer to disgorge property or money acquired through violation of law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. So the question I pose to this Court is, can you endorse a ruling, the consequence of which would be, let's stiff our employees, let's take an hourly employee and tell him, congratulations, you have just made a first assistant manager, and you now get a monthly salary, and as such, you are exempt. And by the way, if you have to put in an extra 15 to 20 hours a week to do your job, we're not paying it for you. We're not paying you that amount. And now that is exactly what happened. Counsel, can we get to the language of the policy? Of course. A policy council represented that the insurer agrees that this was an employment claim. Do you agree with that? We do. All right. So inasmuch as it was an employment claim, why then wasn't it covered? An employment claim is, in this instance, not covered for two reasons. First of all, fundamentally, the policy definition of loss, as you have directly observed, does not include, quote, salaries, wages, overtime, or benefit expenses. That's not an exclusion. It is a clear statement of what the coverage is. So it doesn't meet the fundamental reason I said we don't have to worry about the exclusion that much, although the exclusion is on all fours and pies here. You don't get to the exclusion because they don't get past the insuring clause. They did not suffer a loss because a loss, whether it's an employment claim or otherwise, does not include salaries, wages, overhead, or benefit expenses. And I might add that it was mentioned by counsel in an argument that to the extent an insurance company wants to rely, at least in part, on policy considerations, it should so recite in its policy. Well, I direct the Court's attention respectfully to excerpt of Record 49, where as part of the definition of loss, one of the provisions specifically set forth subsection 8 says loss does not include, quote, matters uninsurable under the law pursuant to which this policy is construed. So we have a ---- You're not really arguing, are you, that because you use the language loss does not include, that that's not an exclusion? It's clearly not an exclusion. It is not. Loss does not include. It sounds like words of exclusion to me. There is a three-step process to find coverage under the policy. First, there must, of course, be an apparel must occur. There must be something that happens within the scope of the insuring agreement. Then applicable conditions and limitations of the policy must be reserved to discern whether or not they qualify in any fashion the loss. And then the third step is to see whether any exclusions exclude from coverage something that would otherwise but for the exclusions be covered. Our view, Your Honor, and we think it's consistent with the structure of this policy, and, of course, our job here is to read it as a whole, to look at those three component parts, is that this language is not an exclusion. And even to the extent it could be construed as that middle ground, a condition or limitation, or even in the extreme, if it's exclusion-like in operation, I reasonably, I respectfully submit that when someone says loss does not include salaries, wages, overhead or benefit expenses, and then we look at the Mosley complaint, which is for, quote, failure to pay overtime wages, waiting time, and for unfair business practices, disgorgement and restitution, I don't think it requires any sort of overextension or word mincing, again, to suggest that those words are plain, clear and understandable to a layperson. What about opposing counsel's argument that it's buried, that the exclusion, if you will, is buried within the definition section rather than being conspicuously set out as an exclusion? Two points. This is a director's and officer's liability policy. This is a policy among, between sophisticated parties. We have here a private corporation, Big Five. You've seen them. They're sporting goods stores. They're big boys. We have a policy whose language is discreet, is logical. Page 49 of the record lays clearly the definitions. There is nothing remote about it. In fact, it is page 2 of the policy. You need merely go no farther than page 2 of the policy, which is 12 pages, 11 pages in length, to find that language. Counsel, doesn't AIU inform us that the sophistication of the insured is irrelevant to the obligation of the insurance company to make its provisions clear and unambiguous? This policy does that. This policy, Your Honor, is clear. It is unambiguous. And when the Court embarks upon the insurance contract analysis, which is to read the contract as a whole and its constituent parts, rather than going about it in the which I think is inappropriate here, let's start by wordnessing, then this policy read as a whole and its constituent parts reinforce from multiple layers, both from the definition of loss, from the various provisions within the definition of loss that states that loss does not include overhead or, excuse me, salaries or wages. My question was just in response to your argument that Big Five is a sophisticated consumer. So if we take that out of the equation, which I think AIU instructs us to do, what's your response regarding the fact that this language according to Big Five was buried in the definition section? If someone says to me that I'm reading this recent book about Alexander Hamilton. It's 900 pages long, but at least the print is small. If someone said to me on page 850, there's some obscure fact about Alexander Hamilton, and if the insurance company wrote that book, maybe that would be a kind of argument, analogy that would apply here. But where I have a provision, which is on the second page of a clearly written policy that is laid out in very understandable terms, I respectfully submit that it is not ambiguous, that it is not hidden. In fact, it's very much front and center for anyone who even casually reads this contract. Would a layperson look for exclusions in the definition section? The layperson will definitely start the coverage analysis by saying I need to first read the coverage grant. When you do that, it says loss means the total amount which the directors and officers become legally obligated to pay as a result of all claims first made during the period. That's pretty broad. That means any claim that's made during the period, is it not? Well, but that's why the same – an insured can't say I'm going to read the part of the policy I like but not read the rest of it, especially when it's in the very same clause. Right. The same clause that the Court has just quoted goes on to say that loss does not include the following items. So there's a clear delineation that we have the exclusion clause. For the eight exclusions. Even if it's characterized as such. I certainly understand the Court's concluding that, well, gee, it seems to limit this broad grant of coverage. Well, it certainly does. So to the extent that it does as a limitation or, again, not to repeat myself, as an exclusion, it does so clearly, conspicuously, and in relation to other provisions of the policy which, when read in concert with it, reinforce this notion that we are not a payroll service. The insurance company is not out here to pay the employees money that Big Five should have paid them. And that's why Big Five isn't damaged. All they've been required to do is deliver to the employees that which they should have been paid in the first instance. That is restitutionary in nature. That is restitutionary. So there is no damage. And to suggest, for example, one of the arguments asserted by Big Five at the trial court was that, well, there's an omnibus request for such other relief as may deem appropriate in this wage lawsuit. Therefore, those are generic damages. Those must be covered. And we went back and said that we think that that argument, as indicated by Judge Robinson, doesn't make sense because you have to look at the nature of the claim for relief. And, again, the nature of the claim for relief is clearly articulated in the complaint at page 114 of this record. And I would like to also say in passing that with respect to this defense cost issue, that Big Five is just flat wrong. This is not a duty-to-defend policy. And the rules of construction ---- So what he's saying is you look at these California cases which, in effect, engraft an additional duty. What's your response to that? My response to that is that the only California court that has expressly addressed the issue of the interrelation between defense costs and coverage under a DNO policy is the HELFAND, H-E-L-F-A-N-D decision cited in our brief. And that court expressly states, and I'll turn the Court to page 38 and 43 of the answering brief, that court expressly recognized what is in the policy, namely, that defense costs are a component of loss. Here the policy expressly says that defense costs means that part of loss, loss, that's the principle clause we're talking about, consisting of attorney's fees. Counsel, what language are you relying upon in HELFAND? Because that was a duty-to-defend case. On HELFAND? Yes. That's a duty-to-defend case. No, I'm ---- it was not. It was not a duty-to-defend case? Correct. HELFAND was a director's and officer's liability. It was a duty to reimburse defense costs identical to the duty in this case. Okay. What language are you relying upon to say it's tied to the claim? The definition of defense costs found, again, on page 2. You don't have to read very far in the policy. Page 2, definition, section Roman 2D says defense costs means that part of loss, that defined term, consisting of reasonable attorney's fees, et cetera, and investigating claims. Then you go down to loss and you ask yourself, do we here have a loss? And the answer is we don't, because the claims asserted are for unpaid wages, for overtime, for things that are carved out of the insuring clause, and which for good measure are expressly excluded because of the language about, again, similar provisions and statutes. So is your argument that there's no obligation to reimburse defense costs if there is no coverage under the policy? Is that your argument? Yes. And I just state it only modestly differently. There is no duty to reimburse any defense costs if there is no loss. Here, there is no loss and, therefore, no duty to reimburse for any defense costs. And any question about that, to the extent the Court has undecided, the scale is decidedly different, except I respectfully submit, by looking at the exclusion at the end of the policy, which is, we admit, clearly an exclusion, which expressly states that the obligation here, all obligations are undone to the extent that claim is asserted for alleged violation of labor-like statutes. So if you look at the beginning of the policy, the middle of the policy, and the end of the policy, we have consistent provisions consistently addressing this situation, superimposed upon which we have a public policy from the California Supreme Court, which I would think would cause this Court to favorably entertain the presentation I have just made. And collectively, those points strongly suggest that the trial court's analysis of this situation was correct, and that this decision, this decision should be affirmed. Counsel, Heflin says, for example, DNA policies generally do not obligate the carrier to provide the insurance with the defense. More likely, they require the carrier to reimburse the insured for defense costs. As a component of loss. As an ingredient. Ingredient. As an ingredient of loss. What's your response to opposing counsel's argument that in this case, because there was responsibility to advance costs because there was a potential coverage issue under the policy? What's your response? My response is that that analysis is strictly drawn upon and from the duty to defend cases, which this is not. The California precedents that talk about the broad duty to defend where the courts have embraced correctly the notion that where you have a duty to defend, one of the specific protections in insured purchases is that of getting an attorney hired to look after them at the insurance company's expense, a very specific benefit bargained for. Here, it is not bargained for. It is not promised. And therefore, the policies underlying the duty to defend cases have no application here at all. Because in two places, this policy says, and here to the deck page, the declarations page at Excerpt from Record 46. This policy does not provide any duty by the insurer to defend any insured. And again, for the belt and suspenders aspect of it, it says separately in the body of the policy that, again, we have no duty to defend. So my regrettably long-winded answer to your question is this ain't a duty to defend policy, and all the precedents cited by Big Five to support their defense cost argument are duty to defend precedents. Thank you, counsel. Thank you. The case just argued will be submitted for decision, and we will now hear argument
judges: O'scannlain, Rawlinson. Whaley